Judge Cabell.
On the 6th of January, 1787, articles of agreement were entered into between David Ross and William Duval, by which Ross contracted to sell to Duval several tracts of land, of which one is described as a tract of “ one thousand acres, more or less,” which he had purchased of Duguid and Patterson, in the county of Buckingham. In these articles of agreement nothing is said of the price of the individual tracts of land; but the sale of the whole, on the part of Ross, is said to be in consideration of certain lands sold by Duval to Ross, and estimated at 4,000/. William Duval,- afterwards, sold to his brother Philip the said tract described as containing 1,000 acres, more or less, and gave him an order on Ross to make a title therefor. Ross, not having received a conveyance from Duguid and Patterson, delivered to Philip Duval a copy of the articles of agreement between himself and Duguid and Patterson for the purchase of this land, with an order directing them to make a deed for the land therein mentioned to William Duval, or his order. Philip Duval (as appears by his *291 answer) was struck with the circumstance that the land was described in these articles as “ containing, by estimation, 796 acres,” but made no objections ; thinking, as is commonly the case, that, being an old survey, it might so far exceed the nominal quantity as actually to contain 1,000 acres. He, however, particularly informed Ross that he would have the land actually surveyed before a deed should be made ; to which he assented, and promised to repay any reasonable expenses. On making the survey, the tract, so far from containing 1,000 acres, fell short of the 796, by twenty-odd acres. An action was afterwards instituted in the court of Henrico county, against Ross, in the name of William Duval, claiming compensation for the deficiency, at the rate of 20í. per acre, alleging that, although the land had been described in their articles of agreement as a tract containing 1,0QQ acres, more or less, yet the contract as to the price was a contract by the acre, and that the land had been actually estimated at 1,000 acres, at 20s. per acre. Duval obtained a judgment for 408/. damages, besides costs, which was afterwards enjoined by Ross, who made Philip Du-val a party also; and the chancellor having perpetuated the injunction, the Duvals appealed to this court.
I cannot perceive, in this case, any ground on which Ross can found his claim to the interference of a court of equity. The controversy between the parties, a mere contest about the terms of a contract, was properly cognisable before a court of law. It was regularly submitted to a jury, who fully investigated and fairly decided it. Ross himself complains neither of surprise, of the absence of witnesses, nor of any other circumstance to impeach the fairness of the trial. He does not state the subsequent discovery of testimony unknown to him at the trial; and although he calls on the Duvals to answer as to certain facts which he alleges were known to them, yet he nowhere intimates that these facts were *292 known to them only, so as to be incapable of other proof, and thus to authorize a resort to a court of equity for the purpose of extorting a disclosure. In fact, the only ground on which he himself rests the subject, is, that the judgment is oppressive and unjust. What is this, but, under the specious pretext of equity and justice, to give to the court of chancery the enormous power of revising and controlling verdicts and judgments in all cases whatsoever? A power dangerous in itself, incompatible with the genius of our government, and utterly denied by our laws.
But, admitting that Ross was properly before the chancellor, how stands the case on its merits ? Take his own statement, and it is evident that he sold, for a thousand pounds, a tract of land which he represented to the buyer, at the time of the contract, as containing, by estimation, 1,000 acres, more or less; whereas, in truth, the tract had been always estimated to contain only 796 acres, more or less, ás appears by his own title-papers» I will not say that this was an intentional fraud, practised by Ross on Duval; but to apply to it the mildest term, it was at least a mistake, of which he ought not now to avail himself, to the injury of Duval. If, therefore, I w§re to confine myself to the bill only, I should be of opinion that Duval ought to be compensated for the deficiency. But when the answers are considered, they leave no possibility to doubt. They expressly, flatly, and unequivocally contradict all the material allegations in the bill in relation to the contract; declaring it to have been a contract, not of 1,000/. for the tract in gross, but of 1,000/. for 1,000 acres, at 20s. per acre. As for the exhibits in the cause, relating to some transactions between the parties of a date subsequent to that of the contract, and which were introduced to strengthen the construction put upon it by Ross, they are either explained away by the answers, or are not of such a character *293 as to countervail the positive denials of the answers. It is somewhat remarkable that this cause was set for hearing without any replication to the answers; which circumstance precluded all depositions, although there were two subscribing witnesses to the contract, who could have given correct as well as disinterested testimony. That testimony, however, was not necessary to the appellants. If it would have availed the appellee, it is his own fault that he has lost its benefit. Deciding the cause upon the evidence in the record, I have no hesitation in pronouncing my opinion that the decree of the chancellor ought to be reversed, and the injunction dissolved.
Judge Brooke.
One of the appellants in this case obtained a judgment at law upon a covenant entered into by the appellee to convey and make a good title to 1,000 acres of land, more or less. The appellee, without even suggesting, in his bill, any good or sufficient cause of his having failed to defend himself at law, obtained an injunction. The appellants, by their answers, deny the whole of the supposed equity in his bill, and rely on the judgment at law : no depositions were taken 'in the case, and the only exhibits in the record are the copies of thé covenant on which the action at law was founded, and of some accounts and receipts, &c. filed in another suit, and referred to by the complainant’s bill in this. At the rules, the cause was set for hearing, and the chancellor perpetuated the injunction, and, in effect, reversed the judgment of the court of law ; whether upon a more correct construction of the covenant or not than it received in the court of law it is not important to decide. If the court of law permitted the jury to give an improper construction to it, the objection ought to have been made at law: if the verdict of the jury was contrary to. the evidence, a new trial ought to have been *294 asked, for. Upon the evidence, which was before the court of chancery, (and which may be presumed to have been before the jury, because the contrary is nowhere alleged,) I am inclined to think the verdict was correct. In the case of Bedford v. Hickman, in this court, it appearing that the title-deeds of the vendor must have disclosed to him the true quantity of land, he was compelled to account for a deficiency to the vendee, though the deed to the latter expressed a quantity more or less, as in the present case. But, however that may be, to permit a court of equity to- reverse the decision- of a court of law on the sole ground that it was erroneous, would be to confound the jurisdictions of the two courts, and contradict the many decisions of this court, which have denied to a court of equity that power. The case, of The Commonwealth v. Nicholas, decided this, term, and the cases there referred to, are-express authorities on this point. I am therefore of opinion, the decree of the chancellor must be reversed.
Judge Roane.
On the merits of this case, I am. inclined to think that the case of Bedford v. Hickman, in this court, (Fall of 1804,) is an authority for the appellant.
That was a bill by Hickman, to be relieved against a judgment in Bedford's favour, for the price of the land purchased. The bill stated that it was purchased for 900 acres, “ more or lessand that, since the purchase, it was discovered that a fraud had been practised on him ; for that, by the original deed under which Bed-ford held the land, only 709 acres are conveyed ; that, by a survey, there were only 765; and that the seller,, Bedford, knew of the deficiency, as he had the said ori- ' ginal deeds in his possession, and was reminded, of the quantity by one Taylor. The ^answer of the defendant denied fraud; averred he had no knowledge of the- *295 quantity of acres, but by the tax-roll; that he sold for -M more or less,” and would have preferred a survey, which, however, was declined by Hickmany who elected to take the land for 900 acres, after seeing one of the deeds ; that he himself bought the land for 900 acres ; and admits he had seen two old deeds, but had no recollection of their contents. It was argued, as Bedford did not disclose all the facts at the time, and only showed the particular deed conveying to him 900 acres, and some receipts for taxes, but said nothing concerning the two elder deeds, which made the quantity of land less as aforesaid, that this was such a concealment of material facts and circumstances as would vacate a bargain of hazard. The county court, granted a perpetual injunction for the excess of the price of the land, which decree was, in succession, affirmed by the court of chancery and this court.
This case goes the full length of defeating the appellee on the merits. In the case at bar, there was no equivocal knowledge respecting the number of acres held by him. His agreement and deed from Duguid and Patterson called for only 796 acres, and yet he undertook to represent the tract as' containing 1,000 acres, “ more or less;” which last words are, in general, only construed to extend to small errors, arising from variations in instruments, &c. Here was a concealment of a most important fact, and a representation on the part of Ross, which binds him to warrant the quantity represented.
It is not denied that the subsequent conduct of the adverse party, after a full discovery of the deficiency, may waive the original right to compensation : but the facts stated in this case, as on the part of William Duval, are not so clear and explicit as to exclude any other construction; and, as to the knowledge of Philip Du- *296 val, it wás acquired after his right accrued under the covenant; and he did not. then. waive his right to compensation by any act of his. He concluded, notwithstanding the call of the agreement of Duguid and Patterson, that Ross relied, as to making out his quantity, on its being an old survey; which, in event, would either enable Ross to fulfil his engagement, or subject him to damages under the covenant.
This is the view I have taken of the subject, in exclusion of the question whether Ross is not concluded as to this subject by the verdict and judgment at law. I am therefore for reversing the decree.
Judge Fleming.
I have some doubts on the merits of this case, which I have not maturely considered j as it appears to me that all the facts and circumstances stated in the bill were, or might have been, given in evidence, on the trial at law, in Henrico court, and were proper subjects for the consideration of a jury, which was fully competent to decide upon them. I am therefore of opinion, according to a variety of decisions of this court, that the interference of a court of equity was improper; and upon that ground concur in opinion that the decree be reversed, the injunction dissolved, and the bill dismissed with costs.
Decree unanimously reversed, and bill dismissed.